PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* ESTEBAN PÉREZ, Defendant and Appellant.

No. 3056. Argued April 22, 1927.—Decided May 6, 1927.

*Buenaventura Esteves* for the appellant. *José E. Figueras* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was convicted of manslaughter upon an information for that offense.

Esteban Pérez was a plantation overseer who admitted the killing and claimed that he had acted in self-defense. Deceased was a farm laborer named Carlos Rodríguez who lived on the plantation. Defendant received several wounds inflicted apparently by Rodríguez with a club, and said by defendant to have been received by him before firing the shot which resulted in the death of Rodríguez. There was testimony tending to show that Rodríguez had a bad reputation as a dangerous character when aroused and that this reputation was well known to defendant. One witness who arrived upon the scene within a few minutes after the shooting quoted Rodríguez as having said that he came out of his house to kill defendant but that the defendant had been too quick for him. Rodríguez was a man of robust physique and the stronger of the two.

Defendant was some sixty years of age at the time of the trial and had never before been charged with any offense. He testified that Rodríguez came to him upon being discharged by the Echeandías, owners of the neighboring plantation; that Rodríguez insisted that his bad reputation had been earned during his earlier manhood and that the violent temper was a thing of the past; that witness told Rodríguez that if he came to live on the plantation he would have to obey orders and avoid making trouble; that Rodríguez assented to these terms and witness gave him employment because he was honest, industrious and a good farm hand; that witness had always treated Rodríguez with more consideration than any of the other employees because witness knew him to be a dangerous man and prior to the day of the quarrel which resulted in the death of Rodríguez there had been no trouble; that defendant did not retreat when Rodríguez advanced upon him because defendant had been told that if he retreated Rodríguez would follow him into his house and into any room that he might enter; that Rodríguez had made trouble for Pedro Juanarena in Guajataca, had drawn a knife and attacked him, and on two or three occasions had imposed upon Cecilio Echandía who had been obliged to send for Pedrito; that many timid people had told defendant that Rodríguez was a dangerous man, that the day defendant quarreled with him defendant would have to abandon the plantation, leaving Rodríguez in possession thereof, that he was a killer; that one day while visiting Laurnaga, Pedro told defendant that Rodríguez was a very dangerous man; that one day in Guajataca had it not been that Laurnaga was near a big table and a counter Rodríguez would have murdered him; that Rodríguez had drawn a knife, and that the narrator was saved only by Providence and the timely arrival of assistance.

Cecilio Echandía then took the stand and testified to the bad reputation of Rodríguez. On cross-examination the district attorney elicited the information that the acquaintance

of this witness with Rodríguez extended over a period of some ten years and that about four years before the date of the trial Rodríguez had left the plantation of witness and had gone to live on a plantation belonging to a brother of witness Pedrito. The judge then asked a few questions, going over the same ground already covered by the *fiscal*. Following this the *fiscal* asked if the witness had continued upon the trail of Rodríguez, keeping him under close observation after his removal to the plantation belonging to Pedrito. After replying in the affirmative the witness added that Rodríguez later left the plantation "Entente" belonging to the Oronoz Succession because of a quarrel with a nephew of witness. Thereupon the *fiscal* told the witness to confine his remarks to the matter of reputation. Counsel for the defense intimated that the answer was proper. The judge said that the witness might continue. The *fiscal* then stated that there was no question of corroboration; that defendant had not mentioned this incident. The court ruled that in reply to questions as to general reputation when propounded by the *fiscal* the witness could not refer to specific acts. Counsel for the defense noted an exception upon the ground that defendant had testified to such acts in order to explain the reasons for his belief that he was exposed to serious bodily injury when attacked by Rodríguez.

The stenographic record of what next ensued reads thus:

"District attorney: My contention is this: That he can not testify to specific facts; counsel says that this is a corroborating witness, but the defendant, upon referring to these acts, said that he was told this. I move to strike this on the ground that it is hearsay. After striking it out, there will be nothing to corroborate.

"Judge: The court orders that that part of the testimony of the defendant which refers to specific acts concerning So-and-so, John Doe and Richard Roe, be stricken out.

"Counsel: We take exception on the ground that the ruling of the court prejudices the rights of the defendant."

The *Fiscal* of this court confesses error in this regard, but

says that defendant was not prejudiced because the ruling of the court now complained of by appellant could not have erased from the minds of the jury the effect produced thereon by the testimony of defendant.

We are unable to concur in this view of the matter. The jury had been sworn to try the case according to the law as laid down by the court and to such evidence only as was properly before them. Certainly there is no presumption that the jury would decide or did decide the case upon facts and circumstances expressly excluded from their consideration by the trial judge.

The judgment appealed from must be reversed.